**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| INTEGRAL WIRELESS TECHNOLOGIES LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>TELTONIKA IOT GROUP and TELTONIKA NETWORKS, UAB<br><br>*Defendants.* | Civil Action No. 2:26-cv-00452<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Integral Wireless Technologies LLC (hereinafter, "Integral Wireless" or "Plaintiff") files this Complaint for Patent Infringement against Defendants Teltonika IoT Group and Teltonika Networks, UAB (collectively "Teltonika" or "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendants' infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,953,411 | Virtual Soft Hand Over in OFDM and OFDMA Wireless Communication Network | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7953411 |
| 2. | 7,822,141 | Multiple Input, Multiple Output Communications Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7822141 |
| 3. | 8,031,654 | Wireless Communication System, Apparatus for Supporting Data Flow and Methods Therefor | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8031654 |

| | Patent No. | Title | Available At |
|---|---|---|---|
| 4. | 7,310,537 | Communication on Multiple Beams Between Stations | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7310537 Case 1:25-cv-00833 Document 1 Filed 05/30/25 Page 1 of 43 |
| 5. | 7,627,805 | Data Coding with an Efficient LDPC Encoder | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7627805 |
| 6. | 7,548,592 | Multiple Input, Multiple Output Communications Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7548592 |
| 7. | 7,738,595 | Multiple Input, Multiple Output Communications Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7738595 |

2.    Integral Wireless seeks injunctive relief and monetary damages.

## PARTIES

3.    Integral Wireless is a limited liability company formed under the laws of Texas with a registered office address located at 512 W. Martin Luther King Jr. Blvd., Unit 281, Austin, Texas 78701 (Travis County).

4.    Upon information and belief based on public information, Defendant Teltonika IoT Group ("Teltonika Group") is a company organized and existing under the laws of Lithuania.

5.    Upon information and belief based on public information, Defendant Teltonika Networks, UAB ("Teltonika Networks") is a company organized and existing under the laws of Lithuania and is a subsidiary of Teltonika Group.

6.    Upon information and belief based on public information, Defendants maintain an established place of business at Saltoniškių st. 14, LT-08105, Vilnius, Lithuania.

7.    Upon information and belief, Defendants own, operate, advertise, and/or control the

websites    https://www.teltonika-gps.com/,    https://www.teltonika-iot-group.com/,    and

www.teltonika-networks.com (and related domains), through which they advertise, sell, offer to

sell, provide, and/or educate customers about their products and services, including the Accused

Products.

### JURISDICTION AND VENUE

8.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9.    This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, Defendants are not residents of the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See also In re HTC Corporation*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

11.    This Court has personal jurisdiction over Defendants Teltonika Group and Teltonika Networks (together, "Teltonika" or "Defendants").  Defendants have purposefully directed their commercial activities at the United States and at the State of Texas, have established continuous and systematic contacts with the State of Texas, and the claims asserted herein arise out of and relate to those contacts.

12.    Defendants have sold, caused to be sold, offered for sale, shipped, directed, and imported the Accused Products in and into the United States.

13.    Personal jurisdiction is also proper because Teltonika Group's and Teltonika

Networks' U.S. affiliates and subsidiaries function as wholly controlled agents of Teltonika Group and Teltonika Networks.  The U.S.-based activities of Teltonika Group's and Teltonika Networks' U.S. subsidiaries are therefore attributable to Teltonika Group and Teltonika Networks.

14.    Teltonika Group is the holding and managing company of the Teltonika company group and is the parent of Teltonika Networks and its U.S. affiliates and subsidiaries.  Teltonika Group does not merely hold an ownership interest in its U.S. affiliates and subsidiaries; it is the managing company of the entire group.[1]

15.    Teltonika Group's public statements confirm that its Chief Executive Officer, Marius Derenčius, simultaneously serves as CEO of Teltonika Group, the managing company, and the president of the entire Teltonika company group, including Teltonika Networks and Teltonika Group's U.S. affiliates and subsidiaries.  There is no separation of executive governance between Teltonika Group and its affiliates and subsidiaries because a single Teltonika Group executive exercises ultimate authority over both.

16.    Teltonika Group exercises group-wide control over the policies, operations, personnel, intellectual property, and commercial strategy of Teltonika Networks and its U.S. affiliates and subsidiaries through centralized governance instruments that apply uniformly across all group entities.  Specifically:

(a) *Code of Conduct.* Teltonika Group has issued and maintains a Code of Conduct that by its terms "applies to everyone in the organization, at all levels, including employees, managers, and ***subsidiaries controlled by Teltonika***."[2]  The employees, managers, and operations of Teltonika Group's U.S. affiliates and subsidiaries are governed by parent-

---

[1] https://www.teltonika-iot-group.com/who-we-are/faq ("Marius Derenčius is the CEO of Teltonika IoT Group, the managing company, and the president of the entire Teltonika company group.").
[2] http://teltonika-iot-group.com/policies-certificates/code-of-conduct

issued behavioral and ethical standards—a hallmark of parent control over subsidiary conduct.

(b) *Integrated Management System.* Teltonika Group has established and enforces a single, group-wide Integrated Management System ("IMS") that governs quality management, environmental standards, occupational safety, and information security across all group entities, including Teltonika Networks. The IMS Policy is issued in the name of "TELTONIKA group companies" and commits all Teltonika entities, as a group, to compliance with unified ISO standards. A single integrated management framework binding all operating entities is strong evidence that Teltonika Group, not any individual subsidiary, controls operational standards across the enterprise.

(c) *Centralized Manufacturing.* All Teltonika products—across all subsidiaries—are designed and developed by Teltonika engineering specialists in Lithuania and then produced in manufacturing facilities operated by the Teltonika company group. The manufacturing entity, Teltonika EMS, UAB, is itself a wholly-owned subsidiary of Teltonika Group.

(d) *Centralized Intellectual Property.* All intellectual property across the Teltonika enterprise — including patents, trademarks, copyrights, designs, and know-how — is owned by the Teltonika company group, not by any individual subsidiary. Teltonika Networks sells products bearing the Teltonika brand and trademarks that belong to, and are controlled by, Teltonika Group. When Teltonika Networks and other Teltonika Group affiliates and subsidiaries make commercial use of the Teltonika brand in the U.S., they do so as agents of the IP owner, Teltonika Group. Teltonika Group's centralized brand-guidelines documentation further confirms that all marketing and communications

standards — including those governing US distributor-facing materials — are set at the group level.

(e) *Centralized Brand and Marketing Standards.* Teltonika Group issues and enforces group-wide brand guidelines, marketing materials, and communications standards governing all subsidiaries. A single Teltonika communications team handles media relations and press inquiries for the entire company group, and a single Teltonika marketing team oversees product marketing across all subsidiaries.

17.     Teltonika Group, acting through group-level executives, has personally directed and negotiated the key commercial relationships that constitute its U.S. affiliates and subsidiaries' U.S. market presences.  Each of Teltonika's major US distribution agreements was executed by, and publicly announced by, Teltonika Group executives whose authority derives from and who report to Teltonika Group:

(a) The appointment of ABP Technology (Dallas, Texas) as an official authorized US distributor of Teltonika Group and Teltonika Networks was negotiated and publicly announced by Mantvydas Vaičius in his capacity as Teltonika's Director of Sales for the Americas.

(b) The distribution partnership with TD SYNNEX — one of the largest IT distributors in the United States — was similarly executed and publicly announced by Mr. Vaičius acting as Sales Director of Americas continent.

(c) The distribution partnership with NTS Direct for the North American market was announced by Mr. Vaičius in the same capacity, to allow Teltonika to serve customers across the continent.

(d) The Mouser Electronics global distribution agreement was negotiated and announced by Agnius Saviciunas in his capacity as Head of North America Region for Teltonika Networks.

(e) The FirstNet certification and AT&T certification milestones were announced by Mr. Vaičius.

In each instance, the entity making, directing, and publicly taking credit for commercial decisions affecting Teltonika's U.S. business was Teltonika Group or its group-level executives.

18.    Teltonika Group's own public statements confirm that it, not its subsidiaries, formulates and controls the group's global and U.S. commercial strategy. The founder and controlling shareholder, Arvydas Paukštys, who holds majority ownership of the entire group, personally makes and announces major strategic decisions affecting the enterprise as a whole, including decisions affecting the US market.  Teltonika Group's corporate newsroom, not any subsidiary's, is the vehicle through which group-level strategy, including US market expansion, is publicly communicated.

19.    On information and belief, Teltonika Networks does not set its own strategic direction, pricing, distributor policies, or U.S. expansion strategy independently of the parent group.

20.    Teltonika Group and Teltonika Networks have communicated directly with the Federal Communications Commission to obtain approval for one or more of the Accused Products.

21.    Teltonika Group itself purposefully established direct contacts with the State of Texas, and the U.S. contacts of Teltonika Group's U.S. affiliates and subsidiaries are attributable to Teltonika Group because they were made on Teltonika Group's behalf and under Teltonika Group's direction.

22.    In December 2024, Teltonika Group — acting through Julius Baranauskas, its Vice President of Business Development for the Americas — opened and staffed a physical branch office in Dallas, Texas.  This office was announced on Teltonika Group's corporate newsroom and was expressly established to handle customer service, technical product support, and logistics for Teltonika's U.S. affiliates, subsidiaries, partners, and customers, and to ensure a convenient billing system for local partners.  The decision to open the Dallas office, to select Texas as the location, and to staff the office was made by Teltonika Group.  The Dallas location was chosen because of its strategic central location in the U.S. to ensure convenient product logistics and easy connection to partners in remote parts of the country.[3]  Teltonika plans to employ more than one hundred professionals in that office within five years.  A parent company that personally opens a physical office in the forum state, staffs it to support its subsidiaries' U.S. customers and logistics operations, and deploys its own VP to direct the office has purposefully availed itself of the privilege of conducting business in Texas.

23.    Among the U.S. distribution relationships arranged and managed by Teltonika Group's executives are an authorized distribution agreement with ABP Technology, a company headquartered in Dallas, Texas, and an authorized distribution arrangement with NetworkDistri.com, located in Cedar Hill, Texas.  Teltonika products are sold and distributed in Texas through Texas-based commercial partners whose relationships with Teltonika were established by, and are managed at, the group level.  These contacts with Texas are directly attributable to Teltonika Group.

24.    Defendants intend to do and does business in this District, in the State of Texas, and

---

[3] https://www.teltonika-iot-group.com/newsroom/new-teltonika-branch-in-dallas#:~:text=Teltonika%2C%20a%20high%2Dtechnology%20company%20group%2C%20has%20opened,in%20the%20US%20ensures%20convenient%20product%20logistics

in the United States, has committed acts of infringement in this District, this State, and the United States, and continue to commit such acts directly and through intermediaries, including through inducement of third parties, and offer products and services, including the Accused Products, to customers and potential customers located in Texas, this District, and the United States.

25.     Defendants have purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities. Defendants regularly sell (either directly or indirectly) their products within this District. For example, Defendants have placed and continue to place the Accused Products into the stream of commerce via an established distribution channel with the knowledge or understanding that such products are being and will continue to be sold in this District and the State of Texas.

26.     In addition, or in the alternative, this Court has personal jurisdiction over Teltonika pursuant to Fed. R. Civ. P. 4(k)(2).

27.     Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because Defendants do not reside in any judicial district in the United States.

## THE ACCUSED PRODUCTS

28.     Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

29.     Defendants use, cause to be used, sell, offer for sale, provide, supply, or distribute various 4G LTE compatible devices, 5G compatible devices, and 802.11n/ac/ax Wi-Fi compatible devices, including, but not limited to, the "Accused Products" set forth below:

- Teltonika 4G LTE compatible devices ("Teltonika 4G LTE Devices") including, but not limited to: OTD500, OTD140, OTD144, RUTM09, RUTM59, RUTX09, RUT200, RUT202, RUT204, RUT206, RUT241, RUT260, RUT271, RUT276, RUT281, RUT361,

RUT901, RUT906, RUT951, RUT951 PoE+, RUT956, RUT976, RUT981, RUT986, RUTC40, RUTC41, RUTC42, RUTC50, RUTM11, RUTM16, RUTM20, RUTM30, RUTM31, RUTM50, RUTM51, RUTM52, RUTM54, RUTM55, RUTM56, RUTX11, RUTX12, RUTX14, RUTX50, RUTXR1, ALTOS, ATRM50, CALYX, TRB140, TRB141, TRB142, TRB143, TRB145, TRB160, TRB236, TRB246, TRB247, TRB256, TRB500, TRB501, TRM142, TRM200, TRM240, TRM250, TRM282 and TRM500;

- Teltonika 5G compatible devices ("Teltonika 5G Devices") including, but not limited to: RUTM52, TRB501, CALYX, TRM500, OTD500, RUTM59, RUTM20, RUTM30, RUTM31, RUTM50, RUTM51, RUTM54, RUTM55, RUTM56, RUTC50, RUTX50, RUT271, RUT276, RUT976, TRB500, ATRM50 and ALTOS;

- Teltonika 802.11n/ac/ax Wi-Fi compatible devices ("Teltonika Wi-Fi Devices") including, but not limited to: RUTC50, RUT202, RUT204, RUT956, RUT200, RUT901, RUT951, TAP100, RUT906, RUT260, RUT140, RUT142, RUT361, RUT241, RUT271, RUT976, RUT206, DAP140, DAP142, RUT951 PoE+, RUTM31, ATRM50, RUTM55, RUTM30, RUTM56, RUTM54, RUTM50, RUTM51, RUTM11, RUTM10, RUTXR1, RUTX50, RUTX14, RUTX12, RUTX10, RUTX11, RUTM52, ALTOS, OTD144, RUT145, RUT276, RUT281, RUT981, RUT986, RUTC40, RUTC41, RUTC42, RUTM16, RUTM20, DAP145, TAP200, TAP400, TCR100, RUT360, RUT240, RUT950, RUT955, RUT850 LTE Router, RUT230 3G Router, RUT900 Wireless, RUT500 3G Router, RUT905 3G Router, RUT550 LTE Router, Teltonika Energy EVC2, TeltoCharge EVC1, TeltoCharge EVC13 and TeltoCharge EVC16.

30.    The Accused Products are made available to customers through Defendants' websites including, but not limited to, https://www.teltonika-gps.com/ and https://www.teltonika-

networks.com.

31.     Defendants' websites allow their customers to purchase the Accused Products from the United States through a "Order Now" feature and an online form. *See e.g.* https://www.teltonika-gps.com/products/accessories/video-telematics/teltonika-dualcam (providing the possibility to order Teltonika's DualCam); *see also* https://www.teltonika-networks.com.

32.     Defendants also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes.  *See, e.g.*, Camera Manual, TELTONIKA, available at  https://wiki.teltonika-gps.com/view/Camera_Manual#Important_Set-up_links (last visited September 10, 2025) (providing user manual for Teltonika DualCam) and https://www.teltonika-gps.com/products/accessories/video-telematics/teltonika-dualcam (last visited September 10, 2025) (providing specifications for Teltonika DualCam).

33.     Defendants also import into the United States, distribute, and sell the Accused Products to end-users *via* the Internet and *via* distribution partners, retailers, reseller partners, and solution partners.  *See, e.g.*, *Teltonika Product Line*, MOUSER ELECTRONICS, available at https://www.mouser.com/manufacturer/teltonika/product-line/ (last visited September 10, 2025) (listing most Teltonika products for sale); *FMM650 GPS tracker*, 4CONTROL.ONLINE, available at https://4control.online/product/fmm650-gps-tracker/ (last visited September 10, 2025) (listing the FMM650 GPS tracker for sale); *Teltonika DualCam*, GPSWOX, available at https://www.gpswox.com/en/gps-trackers-shop/all/teltonika-dualcam-121 (last visited September 10, 2025) (listing the Teltonika DualCam for sale); *TELTONIKA DASHCAM*, GPS TELEMATICS, available at https://www.gpstelematics.eu/teltonika-dashcam  (last visited September 10, 2025) (listing the Teltonika DashCam for sale); *TAT141*, ARPAWAY,

https://www.arpaway.com/product/tat141/?srsltid=AfmBOooxaygE4SqOQ9nLcCH5To4xVg7iA

90RU4XRvQ1ga_20Ne6RxpLj&doing_wp_cron=1756407315.0802450180053710937500  (last

visited September 10, 2025) (listing the Teltonika TAT141 for sale).  Those sales occur in the

United States, and throughout Texas, including in this District.

34.    For these reasons and the additional reasons detailed below, the Accused Products

practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,953,411

35.    Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as

though fully set forth in their entirety.

36.    For purposes of this Count, the term "Accused Products" shall mean Teltonika 4G

LTE compatible devices, including, but not limited to, OTD500, OTD140, RUTM09, RUTM59,

RUTX09, OTD144, RUT200, RUT202, RUT204, RUT206, RUT241, RUT260, RUT271,

RUT276, RUT281, RUT361, RUT901, RUT906, RUT951, RUT951 POE+, RUT956, RUT976,

RUT981, RUT986, RUTC40, RUTC41, RUTC42, RUTC50, RUTM11, RUTM16, RUTM20,

RUTM30, RUTM31, RUTM50, RUTM51, RUTM52, RUTM54, RUTM55, RUTM56, RUTX11,

RUTX12, RUTX14, RUTX50, RUTXR1, ALTOS, ATRM50, CALYX, TRB140, TRB141,

TRB142, TRB143, TRB145, TRB160, TRB236, TRB246, TRB247, TRB256, TRB500, TRB501,

TRM142, TRM200, TRM240, TRM250, TRM282, TRM500 and other substantially similar

products and services offered in the past or the future, and all of the prior models, iterations,

releases, versions, generations, and prototypes of the foregoing, along with any associated

hardware, software, applications, and functionality associated with those products and solutions.

37.    The USPTO duly issued U.S. Patent No. 7,953,411 (hereinafter, the "'411 patent") on

May 31, 2011, after full and fair examination of Application No. 11/150,829 which was filed on

June 9, 2005. See '411 patent at p. 1.

38.     Integral Wireless owns all substantial rights, interest, and title in and to the '411 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

39.     The claims of the '411 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon handover mechanisms for orthogonal frequency division multiplexing (OFDM) and orthogonal frequency division multiple access (OFDMA) wireless communication systems by providing an efficient virtual soft handover (VSHO) mechanism that allows a mobile subscriber station to transmit and receive a frame with only one base station while monitoring communications with adjacent base stations.

40.     The written description of the '411 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

41.     Defendants have directly infringed one or more claims of the '411 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

42.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 10 of the '411 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,953,411).

43.     As just one example, as detailed in Exhibit A, Defendants, through the use and

provision of the Accused Products, including, but not limited to, the Teltonika 4G LTE compatible devices, perform a method for implementing a hand over of a mobile subscriber station (MSS) in a wireless communication network, comprising: maintaining an active set comprising a list of transmitting base stations, each transmitting base station capable of communicating with the MSS, the MSS communicating with only one current transmitting base station in a single frame; monitoring all transmitting base stations in the active set while transmitting data to and receiving data from the current transmitting base station in one or more bursts that are allocated for the MSS in the single frame, the data representing communication traffic between the MSS and the current transmitting base station, wherein the current transmitting base station is the only base station of the list of transmitting base stations operated to transmit data to the MSS using the one or more bursts that are allocated for the MSS in the single frame; determining a preferred transmitting base station included in the transmitting base stations based upon the monitoring; informing the preferred transmitting base station to the current transmitting base station by a fast feedback channel; stopping the MSS from transmitting data to and receiving data from the current transmitting base station; and operating the MSS to exchange transmission of data with the preferred transmitting base station.

44.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '411 patent.

45.     Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,822,141**

46.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

47.    For purposes of this Count, the term "Accused Products" shall mean Teltonika 802.11ac Wi-Fi compatible devices, including but not limited to Teltonika 802.11n Wi-Fi compatible devices, including, but not limited to RUTC50, RUT202, RUT204, RUT956, RUT200, RUT901, RUT951, TAP100, RUT906, RUT260, RUT140, RUT142, RUT361, RUT241, RUT271, RUT976, RUT206, DAP140, DAP142, RUT951 PoE+, RUTM31, ATRM50, RUTM55, RUTM30, RUTM56, RUTM54, RUTM50, RUTM51, RUTM11, RUTM10, RUTXR1, RUTX50, RUTX14, RUTX12, RUTX10, RUTX11, RUTM52, ALTOS, OTD144, RUT145, RUT276, RUT281, RUT286, RUT981, RUT986, RUTC40, RUTC41, RUTC42, RUTM16, RUTM20, DAP145, TAP200, TAP400, TCR100, RUT360, RUT240, RUT950, RUT955, RUT850 LTE Router, RUT230 3G Router, RUT900 Wireless, RUT500 3G Router, RUT905 3G Router, RUT550 LTE Router, Teltonika Energy EVC2, TeltoCharge EVC1, TeltoCharge EVC13, TeltoCharge EVC16, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

48.    The USPTO duly issued U.S. Patent No. 7,822,141 (hereinafter, the "'141 patent") on October 26, 2010, after full and fair examination of Application No.: 11/469,075 which was filed on August 13, 2006. *See* '141 patent at p. 1.

49.    Integral Wireless owns all substantial rights, interest, and title in and to the '141 patent, including the sole and exclusive right to prosecute this action and enforce the '141 patent against

infringers and to collect damages for all relevant times.

50.      The claims of the '141 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve systems and methods for transmission and reception of multiple data streams in a multiple-input, multiple-output communications channel.

51.      The written description of the '141 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

52.      Teltonika Defendants have directly infringed one or more claims of the '141 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

53.      Teltonika Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '141 patent, as detailed in **Exhibit B** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,822,141).

54.      As just one example, as detailed in Exhibit B, Teltonika Defendants, through the use and provision of the Accused Products, perform a method, comprising: generating two or more forward weighted signals by weighting two or more input signals with initial transmitter weights Vi associated with two or more forward channels; transmitting the two or more forward weighted signals via two or more forward antennas; receiving, at the two or more forward antennas, two or more reverse weighted signals transmitted via two or more reverse antennas corresponding to two or more reverse channels, the two or more reverse weighted signals formed from two or more

reverse signals with receiver weights Ui associated with the two or more reverse channels; determining the receiver weights Ui associated with each of the two or more reverse weighted signals; choosing updated transmitter weights Vi′ for the two or more forward channels based at least in part on the determined receiver weights Ui to provide a target level of gain for the two or more forward channels; and iteratively repeating the transmitting, receiving, determining, or combinations thereof, for subsequent transmissions using the two or more forward channels until the updated transmitter weights Vi′, the receiver weights Ui, or combinations thereof, are at target values.

55.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '141 patent.

56.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,031,654

57.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

58.     For purposes of this Count, the term "Accused Products" shall mean Teltonika 5G compatible devices, including but not limited to RUTM52, TRB501, CALYX, TRM500, OTD500, RUTM59, RUTM20, RUTM30, RUTM31, RUTM50, RUTM51, RUTM54, RUTM55, RUTM56, RUTC50, RUTX50, RUT271, RUT276, RUT976, TRB500, ATRM50, ALTOS, and other substantially similar products and services offered in the past or the future, and all of the prior

models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

59.    The USPTO duly issued U.S. Patent No. 88,031,654 (hereinafter, the "'654 patent") on October 4, 2011, after full and fair examination of Application No. 11/726,397 which was filed on March 20, 2007.  *See* '654 patent at p. 1.

60.    Integral Wireless owns all substantial rights, interest, and title in and to the '654 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

61.    The claims of the '654 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed invention includes inventive components that improve the function and operation of wireless communication systems by enabling more efficient handling of acknowledgment signaling in TCP-based data transfers.

62.    The written description of the '654 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

63.    The claims of the '654 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes inventive components that improve the function and operation of data processing systems by using a hierarchical data structure that enables efficient identification and updating of extrema based on indirect addressing of data values.

64.     Defendants have directly infringed one or more claims of the '654  patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

65.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 5 of the '654 patent, as detailed in **Exhibit C** (Evidence of Use Regarding Infringement of U.S. Patent No. 8,031,654).

66.     As just one example, as detailed in Exhibit C, Defendants, through the use and provision of the Accused Products, including, but not limited to, the Teltonika 5G compatible devices, provide a wireless subscriber communication unit for use in acknowledging an allocation of resource in a wireless communication system employing transfer communication protocol (TCP) based data transfer between a network and the wireless subscriber communication unit, the wireless subscriber communication unit comprising: a receiver arranged to receive an allocation message and a TCP data segment; processing logic, operably coupled to the receiver and arranged to process the allocation message to identify an allocation of DL resources to receive the TCP data segment plus sufficient uplink (UL) resources to transfer a stand-alone acknowledgement (ACK) data segment, where the allocation of UL resources to support transmission of the stand-alone ACK data segment is based on a count performed in the network of a predetermined number of data segments transmitted to the wireless subscriber communication unit; and a transmitter arranged to transmit the stand-alone ACK data segment in response to the message.

67.     Upon information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

68.     Defendants willfully blinded themselves to the existence of the '654 patent and

Defendants' infringement, but Defendants had actual knowledge of the '654 patent since at least the time of receiving the original complaint in this action.

69. Defendants have also indirectly infringed one or more claims of the '654 patent by inducing others to directly infringe said claims.

70. Defendants have induced end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '654 patent by providing or requiring use of the Accused Products.

71. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '654 patent, including, for example, claim 5.

72. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on their website on how to use the Accused Products in an infringing manner.

73. Defendants are performing these steps, which constitute induced infringement with the knowledge of the '654 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '654 patent.

74. Defendants' inducement is ongoing.

75. Defendants have also indirectly infringed by contributing to the infringement of one

or more claims of the '654 patent.

76.     Defendants have contributed to the direct infringement of one or more claims of the '654 patent by their personnel, contractors, and customers.

77.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '654 patent, including, for example, claim 15.

78.     The special features constitute a material part of the invention of one or more of the claims of the '654 patent and are not staple articles of commerce suitable for substantial non-infringing use.

79.     Defendants' contributory infringement is ongoing.

80.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

81.     Defendants' direct infringement of one or more claims of the '654  patent is, has been, and continue to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

82.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '654 patent.

83.     Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

84.     Integral Wireless has suffered irreparable harm, through its loss of market share and

goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '654 patent. Defendants' actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

85.     Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,310,537

86.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

87.     For purposes of this Count, the term "Accused Products" shall mean Teltonika 5G compatible devices, including but not limited to RUTM52, TRB501, CALYX, TRM500, OTD500, RUTM59, RUTM20, RUTM30, RUTM31, RUTM50, RUTM51, RUTM54, RUTM55, RUTM56, RUTC50, RUTX50, RUT271, RUT276, RUT976, TRB500, ATRM50, ALTOS, etc., and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

88.     Integral Wireless owns all substantial rights, interest, and title in and to the '537 patent, including the sole and exclusive right to prosecute this action and enforce said patent against

infringers and to collect damages for all relevant times.

89.    The claims of the '537 patent are not directed to an abstract idea and are not limited to well - understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve cellular communication system serving mobile users or any other communication system wherein information can be communicated wirelessly on multiple beams between at least two stations.

90.    The written description of the '537 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

91.    Defendants directly infringed one or more claims of the '537 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

92.    Defendants directly infringed, either literally or under the doctrine of equivalents, at least claim 26 of the '537 patent, as detailed in **Exhibit D** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,310,537).

93.    As just one example, as detailed in Exhibit D, Defendants, through the use and provision of the Accused Products, including, but not limited to, the Teltonika 5G compatible devices, provided a station, comprising: antenna unit configured to receive signals transmitted from another station on multiple beams; and a controller for identifying beams based on beam identity information associated with signals received from the other station, wherein a set of beams that are geometrically distinguished from each other is selected for transmission of signals between

a first station and a second station based on information of the identified beams.

94.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '537 patent.

95.     Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,627,805

96.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

97.     For purposes of this Count, the term "Accused Products" shall mean Teltonika 5G compatible devices, including but not limited to, RUTM51, TRB501, CALYX, TRM500, OTD500, RUTM59, RUTM20, RUTM30, RUTM31, RUTM50, RUTM52, RUTM54, RUTM55, RUTM56, RUTC50, RUTX50, RUT271, RUT276, RUT976, TRB500, ATRM50, ALTOS, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

98.     The USPTO duly issued U.S. Patent No. 7,627,805 (hereinafter, the "'805 patent") on December 1, 2009, after full and fair examination of Application No. 11/069,444 which was filed on February 28, 2005. *See* '805 patent at p. 1.

99.     Integral Wireless owns all substantial rights, interest, and title in and to the '805 patent,

including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

100.    The claims of the '805 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed inventions include inventive components that improve the function and operation of data coding methods by providing an efficient LDPC encoder that generates codewords from a mother code parity check matrix and a macro matrix.

101.    The written description of the '805 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

102.    Defendants directly infringed one or more claims of the '805 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

103.    Defendants directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '805 patent, detailed in **Exhibit E** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,627,805).

104.    As just one example, as detailed in Exhibit E, Defendants, through the use and provision of the Accused Products provided a method of coding data for transmission in a communication channel comprising: generating a codeword from a mother code parity check matrix and a macro matrix, wherein the mother code parity check matrix comprises a (j*m)-by-(k*m) matrix and includes sub-matrices that are m-by-m square matrices with cyclic structure, and

wherein the macro matrix comprises a j-by-k matrix and includes elements that represent nonzero sub-matrices of the mother code parity check matrix.

105.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '805 patent.

106.    Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,548,592

107.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

108.    For purposes of this Count, the term "Accused Products" shall mean Teltonika 802.11n Wi-Fi compatible devices, including, but not limited to RUTC50, RUT202, RUT204, RUT956, RUT200, RUT901, RUT951, TAP100, RUT906, RUT260, RUT140, RUT142, RUT361, RUT241, RUT271, RUT976, RUT206, DAP140, DAP142, RUT951 PoE+, RUTM31, ATRM50, RUTM55, RUTM30, RUTM56, RUTM54, RUTM50, RUTM51, RUTM11, RUTM10, RUTXR1, RUTX50, RUTX14, RUTX12, RUTX10, RUTX11, RUTM52, ALTOS, OTD144, RUT145, RUT276, RUT281, RUT981, RUT986, RUTC40, RUTC41, RUTC42, RUTM16, RUTM20, DAP145, TAP200, TAP400, TCR100, RUT360, RUT240, RUT950, RUT955, RUT850 LTE Router, RUT230 3G Router, RUT900 Wireless, RUT500 3G Router, RUT905 3G Router, RUT550 LTE Router, Teltonika Energy EVC2, TeltoCharge EVC1, TeltoCharge EVC13, TeltoCharge EVC16, and other substantially similar products and services offered in the past or

the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

109.    The USPTO duly issued U.S. Patent No. 7,548,592 (hereinafter, the "'592 patent") on June 16, 2009, after full and fair examination of Application No. 10/954,429 which was filed on September 30, 2004. See '592 patent at p. 1. Application No. 10/954,429 is a continuation-in-part of application No. 10/884,633, filed on Jul. 2, 2004. *Id.*

110.    Integral Wireless owns all substantial rights, interest, and title in and to the '592 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

111.    The claims of the '592 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed invention includes inventive components that optimizes the transmitter and receiver weights of a MIMO system.

112.    The written description of the '592 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

113.    Defendants have directly infringed one or more claims of the '592 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

114.    Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '592 patent, as detailed in **Exhibit F** (Evidence of Use Regarding

Infringement of U.S. Patent No. 7,548,592).

115.    As just one example, as detailed in Exhibit F, Defendants, through the use and provision of the Accused Products, including, but not limited to, the Teltonika 802.11n/ac/ax Wi-Fi compatible devices, provide a multiple-input, multiple-output signal transmitter comprising: a plurality of signal inputs, each signal input configured to provide an input signal; a plurality of multipliers, each multiplier configured to weight an input signal with a respective value of a vector (V); a plurality of combiners, each combiner configured to combine respective ones of the plurality of weighted input signals; and a plurality of antennas, each antenna configured to transmit one of the combined weighted input signals; wherein V comprises a matrix of transmitter weighting coefficients, L comprises a lower triangular matrix, and the inverse of V is designated $V^{-1}$ such that $V^{-1}L^{-1}$ comprises a matrix of receiver weighting coefficients.

116.    Upon information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

117.    Defendants had actual knowledge of '592 patent since at least the time of receiving the original complaint in this action.

118.    Defendants have also indirectly infringed one or more claims of the '592 patent by inducing others to directly infringe said claims.

119.    Defendants have induced end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '592 patent by providing or requiring use of the Accused Products.

120.    Defendants took active steps, directly or through contractual relationships with others,

with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '592 patent, including, for example, claim 1.

121.    Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on their website on how to use the Accused Products in an infringing manner.

122.    Defendants are performing these steps, which constitute induced infringement with the knowledge of the '592 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '592 patent.

123.    Defendants' inducement is ongoing.

124.    Defendants have also indirectly infringed by contributing to the infringement of one or more claims of the '592 patent.

125.    Defendants have contributed to the direct infringement of the '592 patent by their personnel, contractors, and customers.

126.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '592 patent, including, for example, claim 1.

127.    The special features constitute a material part of the invention of one or more of the claims of the '592 patent and are not staple articles of commerce suitable for substantial non-infringing use.

128.    Defendants' contributory infringement is ongoing.

129.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

130.    Defendants' direct infringement of one or more claims of the '592 patent is, has been, and continue to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

131.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '592 patent.

132.    Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

133.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '592 patent. Defendants' actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

134.    Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with

interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,738,595

135.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

136.    For purposes of this Count, the term "Accused Products" shall mean Teltonika 802.11n Wi-Fi compatible devices, including, but not limited to RUTC50, RUT202, RUT204, RUT956, RUT200, RUT901, RUT951, TAP100, RUT906, RUT260, RUT140, RUT142, RUT361, RUT241, RUT271, RUT976, RUT206, DAP140, DAP142, RUT951 PoE+, RUTM31, ATRM50, RUTM55, RUTM30, RUTM56, RUTM54, RUTM50, RUTM51, RUTM11, RUTM10, RUTXR1, RUTX50, RUTX14, RUTX12, RUTX10, RUTX11, RUTM52, ALTOS, OTD144, RUT145, RUT276, RUT281, RUT981, RUT986, RUTC40, RUTC41, RUTC42, RUTM16, RUTM20, DAP145, TAP200, TAP400, TCR100, RUT360, RUT240, RUT950, RUT955, RUT850 LTE Router, RUT230 3G Router, RUT900 Wireless, RUT500 3G Router, RUT905 3G Router, RUT550 LTE Router, Teltonika Energy EVC2, TeltoCharge EVC1, TeltoCharge EVC13, TeltoCharge EVC16, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

137.    The USPTO duly issued U.S. Patent No. 7,738,595 (hereinafter, the "'595 patent") on June 15, 2010, after full and fair examination of Application No. 11/674,389 which was filed on February 13, 2007. *See* '595 patent at p. 1.

138.    Integral Wireless owns all substantial rights, interest, and title in and to the '595 patent, including the sole and exclusive right to prosecute this action and enforce said patent against

infringers and to collect damages for all relevant times.

139.     The claims of the '595 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed inventions include inventive components that improve upon systems and methods for transmission and reception of multiple data streams in a multiple-input, multiple-output communications channel.

140.     The written description of the '595 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

141.     Defendants have directly infringed one or more claims of the '595 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

142.     Defendants have directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '595 patent, as detailed in **Exhibit G** (Evidence of Use Regarding Infringement of U.S. Patent No. 7,738,595).

143.     As just one example, as detailed in Exhibit G, Defendant, through the use and provision of the Accused Products, provides a MIMO signal transmitter comprising at least two vector multipliers, each vector multiplier configured to weight a respective input signal with a vector to form a weighted signal; and at least two antennas, each antenna coupled to at least one of the vector multipliers to transmit a weighted signal, wherein: a channel matrix decomposition is used to determine the vectors for weighting.

144.     Upon information and belief, Defendants have a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

145.     Defendants had actual knowledge of '595 patent since at least the time of receiving the original complaint in this action.

146.     Defendants have also indirectly infringed one or more claims of the '595 patent by inducing others to directly infringe said claims.

147.     Defendants have induced end-users, including, but not limited to, Defendants' customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '595 patent by providing or requiring use of the Accused Products.

148.     Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '595 patent, including, for example, claim 1.

149.     Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customers on their website on how to use the Accused Products in an infringing manner.

150.     Defendants are performing these steps, which constitute induced infringement with the knowledge of the '595 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products

by others would infringe the '595 patent.

151.    Defendants' inducement is ongoing.

152.    Defendants have also indirectly infringed by contributing to the infringement of one or more claims of the '595 patent.

153.    Defendants have contributed to the direct infringement of the '595 patent by their personnel, contractors, and customers.

154.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '595 patent, including, for example, claim 1.

155.    The special features constitute a material part of the invention of one or more of the claims of the '595 patent and are not staple articles of commerce suitable for substantial non-infringing use.

156.    Defendants' contributory infringement is ongoing.

157.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

158.    Defendants' direct infringement of one or more claims of the '595 patent is, has been, and continue to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

159.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '595 patent.

160.    Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it

for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

161.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendants' infringement of one or more claims of the '595 patent.  Defendants' actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

162.    Integral Wireless has been damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

163.    Integral Wireless hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

164.    Integral Wireless requests that the Court find in its favor and against Defendants, and that the Court grant Integral Wireless the following relief:

a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendants or others acting in concert therewith;

b.    A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '654 patent, and the '595 patent;

or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.  Judgment that Defendants account for and pay to Integral Wireless all damages to and costs incurred by Integral Wireless because of Defendants' infringing activities and other conduct complained of herein;

d.  Judgment that Defendants' infringements be found willful as to the '654 patent, and the '595 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Integral Wireless its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>June 5, 2026</u>     Respectfully submitted,

By: <u>/s/ C. Matthew Rozier</u>

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1001 Bannock Street, Suite 241
Denver, Colorado 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

**Attorneys for *Plaintiff INTEGRAL WIRELESS TECHNOLOGIES LLC***

\* Admitted to the Eastern District of Texas

**List of Attachments**

A.   Evidence of Use Regarding Infringement of U.S. Patent No. 7,953,411
B.   Evidence of Use Regarding Infringement of U.S. Patent No. 7,822,141
C.   Evidence of Use Regarding Infringement of U.S. Patent No. 8,031,654
D.   Evidence of Use Regarding Infringement of U.S. Patent No. 7,310,537
E.   Evidence of Use Regarding Infringement of U.S. Patent No. 7,627,805
F.   Evidence of Use Regarding Infringement of U.S. Patent No. 7,548,592
G.   Evidence of Use Regarding Infringement of U.S. Patent No. 7,738,595